# CASES

IN THE

# SUPERIOR COURT

OF

# PENNSYLVANIA.

The Right Reverend Tobias Mullen, Appellant, *v.* Ernest
Juenet, Collector of the City, County and Poor Taxes,
for the First Ward of the City of Franklin, and T. B.
La Rue, Wm. Brosang and James T. Wallace, Commis-
sioners of Venango County.

*Taxation—Exemption—Public charity—Church school.*

A school, the title to which is in an individual, which is under the dom-
ination and control of the Roman Catholic Church, is not a public charity
within the meaning of the constitution so as to be exempt from taxation
by virtue of the facts that no tuition fee is charged, and that up to the pres-
ent time all children, whether members of the church or not, are received
and taught.

The property cannot be said to be regularly and permanently devoted
to purely charitable purposes.

Argued May 18, 1897. Appeal, No. 191, April T., 1897, by
plaintiff, from decree of C. P. Venango County, Jan. Term,
1896, No. 1, dismissing bill for injunction to restrain collection
of taxes on exempted property. Before RICE, P. J., WICK-
HAM, BEAVER, REEDER, and ORLADY, JJ. Affirmed.

Bill for injunction to restrain collection of taxes on exempted
property. Before CRISWELL, P. J.

The facts sufficiently appear in the opinion of the court below.

This cause came on to be heard upon bill, answer, replication and evidence, C. I. Heydrick, Esq., appearing for the plaintiff, and W. H. Forbes, Esq., for the defendants ; after argument and due consideration we find the following facts :

1. That lots Nos. 185 and 188, each in size sixty by one hundred and fifty feet, in the city of Franklin, said county, were, on and prior to October 1, 1879, owned in fee simple by Rev. Thomas Carroll, then of Franklin Pa., who, by deed bearing said date, conveyed the same to Tobias Mullen, of the city and county of Erie, Pa.

2. In the premises of this deed the party of the second part, the grantee, is described as follows, viz : " Tobias Mullen, of the City and County of Erie, and State aforesaid, in trust for the members of St. Patrick's Roman Catholic Church, Franklin, Pennsylvania, party of the second part." In the subsequent parts of the deed no trust is expressed, but there is the usual formal conveyance of the lots, " to the said party of the second part, his heirs and assigns," with a clause of general warranty.

3. That prior to the month of September, 1894, by funds contributed by the members of said St. Patrick's Roman Catholic Church and others, there was erected partly upon each of said lots, a large three-story brick building, principally adapted and designed for school purposes, containing four school rooms, a hall for school entertainments, three small living rooms, a small chapel, a dining room, kitchen and two small class rooms. On the outside of the building is the name " Catholic School."

4. Since September, 1894, except during the customary vacation seasons, there has been maintained in this building a school in which the usual common branches and some others have been taught, with about two hundred pupils in attendance, occupying the four schoolrooms, with four teachers, members of the ecclesiastical order known as " Sisters of Mercy," in addition to the resident priest, the Rev. J. P. McCloskey, who assists in teaching, hearing recitations in certain branches, the church and parish residence occupied by him being on adjoining lots.

5. That since the opening of said school it has been maintained as a free public school; that is to say, all scholars making application for admission thereto have been admitted, and up until date of this hearing there have been in attendance

thereat, at different times sixteen scholars who were not members of or adherents to the Catholic Church, all others being members or children of members or adherents of said church.

6. No tuition is paid by the pupils, the expense of maintenance being met by the church congregation and voluntary contributions. The school is not maintained for profit in any manner, but the sisters engaged in teaching have their home in the building, using the three living rooms, the chapel, dining room and kitchen.

7. At the opening and closing of the schools each forenoon and afternoon there are certain religious exercises, such as repeating the Lord's Prayer, the Creed and the Ten Commandments.

8. The said school is under the general direction, control and management of the resident pastor, Rev. McCloskey, who receives his instructions in relation thereto from the plaintiff, who it appears is his ecclesiastical superior, being a bishop of said Roman Catholic Church, who may change such instructions at pleasure.

9. That said lots do not include more land than is reasonably necessary for said school building and its occupancy for the purpose for which it was intended and is used.

10. The said lots were regularly assessed and returned for taxation at a valuation of $5,500 as the property of "Catholic School H," and county, poor and city rates were levied and assessed thereon.

11. The defendant, Ernest Jeunet, is the collector of county, poor and city taxes in the ward of said city within which the said lots are situated, and has for collection taxes duly and regularly assessed thereon as follows, viz: County taxes, $22.00, poor taxes, $5.50, and city taxes, $68.75, and threatens to proceed by distress upon the personal property on the premises to collect the said taxes.

Upon these facts, the question is presented : Is the said school property exempt from taxation under the constitution and laws of the commonwealth?

We must determine not upon the equities involved. To the extent that the school accommodates and furnishes instruction to the youth of the city, it relieves the burden of taxation upon the general public within the limits of the city, which consti-

tutes one school district. The burden from which the plaintiff now seeks to be relieved is small compared with the expense of educating two hundred scholars for whom the school district would otherwise have to furnish school facilities and instruction. The city could therefore well afford to barter the taxes in question for the relief and exemption which the school affords. But it is not the city alone which is concerned in this controversy. The defense is being made by the county commissioners, in behalf of the taxpayers of the county. If the property be exempt, then to the extent of their proportion of the tax the burden of those outside of the city is increased. Other interests, therefore, than those of the city are at least to this limited extent involved.

Nor are we to dispose of the question by what the local authorities in other localities may have done or are doing with respect to taxing such property. Unfortunately, the laws are not uniformly executed or adhered to. While to a limited extent the usage of other localities and their practice and understanding of the law, may furnish a guide to courts in construing the law in some cases, yet as against the plain letter of the law and its construction as determined by the high court whose duty it is to construe it, we cannot take cognizance of local usages and practices.

Prior to the adoption of the present constitution of the state there was no prohibition against the exemption of property from taxation by the legislature, and the enactment of numerous laws for that purpose, exempting all classes of properties, was recognized as an evil which should be remedied. To do this the people by their constitution provided as follows, viz : " All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, but the general assembly may, by general laws, exempt from taxation public property used for public purposes, actual places of religious worship, places of burial not used for private or corporate profits and institutions of purely public charity."

It will be observed, therefore, that by the terms of the constitution the power of the legislature to exempt property is limited. They may exempt only such as belongs to one or the other of these four classes : (*a*) " Public property used for pub-

lic purposes," that is, property the title to which is in the public and which is used for public purposes. (*b*) "Actual places of religious worship," such as churches. (*c*) "Places of burial not used for private or corporate profit." (*d*) "Institutions of purely public charity."

It is clear that the property in question does not belong to either of the first three classes indicated. If exempt, therefore, it must be as an "institution of purely public charity."

The legislature by Act of May 14, 1874, P. L. 158, designated certain classes of institutions which should be exempt under this clause of the constitution, and in doing so gave to the language quoted a very liberal interpretation, by providing that "All hospitals, universities, colleges, seminaries, academies, associations and institutions of learning, benevolence or charity, with the grounds thereto annexed and necessary for the occupancy and enjoyment of the same, founded, endowed and maintained by public or private charity" should be exempt.

This act has not been held to be unconstitutional, but it has always been construed by the courts with reference to the language of the constitution, so that many of the institutions have been held to be not exempt, notwithstanding they are apparently covered by its general language. The question as to whether or not they were exempt has always turned upon the question as to whether or not they came within the limits defined by the constitution and were in fact "institutions of purely public charity."

The question as to what institutions were purely public charities has, upon given facts, been determined in a number of cases by the Supreme Court, and unfortunately in several of them by a divided court. The judgment of that court, however, although dissented from by some of its members, is as binding upon this court as one sustained by the unanimous opinion of its judges. In this case, however, we do not have to rely upon decisions wherein there have been dissenting opinions, as we think the questions here presented are ruled by adjudications from which there has been no dissent.

It will be observed that the title to the property is in Tobias Mullen, his heirs and assigns, and we do not understand that by the conveyance to him there is raised any trust in favor of the members of St. Patrick's Roman Catholic Church of Frank-

lin. The only use expressed in the deed is in favor of the grantee, "his heirs and assigns." So far, however, as this inquiry is concerned, we deem it immaterial whether the plaintiff holds the title to the lots for himself or as trustee for the members of the said church, as it was no doubt intended that he should. He holds the legal title and the equitable title is either in him or in the membership of the church. If it be in him he has the legal right to control its use. In either case the use is private and personal and there is no evidence whatever of any dedication of the property to a public or a different use. It is true that the congregation has erected a building thereon which is now being used as a school building, and assuming that the equitable title and legal use is vested in them, yet they may at any time change the use of the property and building. A way may be used by an entire community, but if it has an owner who may close it, it is not a public way. Another may be used by but few, yet if all have the right to use it, it is a public way. While today a school is being maintained in the building, which is open to all comers, those having the right to the use of it may lawfully say tomorrow that none but members or adherents of their particular church shall be admitted. The question is not will they do so, but may they do so. Should they do so, would those who are excluded have any remedy or a right to one? By so doing the members would do only that which they might lawfully do; and no one would question the propriety of their so doing. Such would also be the case if the property be held by the plaintiff in his own right and for his own use.

If the Rev. Thomas Carroll had conveyed the lots in question to the plaintiff upon an express trust that they be held and used for free school purposes to which all, or those of some natural division, of those of school age should be entitled to admission upon compliance with such reasonable regulations and requirements as might be necessary for the proper conduct of the school, or if by some proper unequivocal act there had been a dedication and setting apart of the property for a public purpose, subject to reasonable and general restrictions and requirements, a different question would have been presented.

The school as maintained is undoubtedly a charity. It is not in any way intended for profit, but it is in no sense, as we understand it, within the meaning of the provisions of the consti-

tution a "purely public charity." The public has in no sense any vested interest therein or control thereover. Both the ownership and control are private.

In the case of Miller's Appeal, 10 W. N. C. 168, two bills in equity were filed, each praying for an injunction to restrain the collection of taxes, one by William O'Hara, Roman Catholic Bishop of Scranton, and the other by a corporation known as the "Society of Sisters of Christian Charity." The facts in relation to the ownership and control of the property as assessed were very similar to the facts hereinbefore found in this case. A preliminary injunction having been granted by the court below, the same was by the Supreme Court on appeal dissolved. The order being interlocutory and not final, no opinion was filed nor reasons given, as is customary in such cases. In a subsequent case, however, that of Philadelphia v. Women's Christian Association, 125 Pa. 572, PAXSON, C. J., gives the reasons. Among others he says: "Yet it did not appear in that case, upon the hearing upon the preliminary injunction, however the fact may have been, that the real estate taxed was stamped with any public charity; nor was there anything to show that the regulation of the schools might not have been changed at any time and converted into a source of profit."

The same is true of Thiel College (a Lutheran denominational institution) v. County of Mercer, 101 Pa. 530. Of this college the same judge says: "It can convert the very land it seeks to exempt from taxation into money and apply it to its own corporate use;" and in Philadelphia v. Women's Christian Association, supra, PAXSON, C. J., says of it: "So far as appeared in the case there was nothing in its charter to stamp it as a public charity over any other college, and whatever may have been the regulations of its management, there was nothing to prevent these regulations from being changed at any time."

Speaking of Hunter's Appeal, 22 W. N. C. 361, and other cases, the same judge says: "Nor was its charitable character, in either of the cases, so stamped upon the institution itself, upon its organic law, that the mode of administering it might not have been changed at any time."

One of the most recent cases upon the subject is that of Philadelphia v. Masonic Home, 160 Pa. 572, wherein the property was held by a divided court to be not exempt. This was

8  MULLEN *v.* JUENET.

Opinion of Court below—Assignment of Errors. [6 Pa. Superior Ct.

an incorporated institution and its charter provided that its object should be "to provide for indigent, afflicted or aged Free Masons, their widows and orphans, in the State of Pennsylvania, and for such others as may be placed in its charge." This was held to be not a "purely public charity."

In view of the facts found and these authorities, we have reached the following conclusion of law:

That the property upon which the taxes in question have been levied is not devoted to a purely public charity, and that the school maintained thereon is not an institution of purely public charity within the meaning of the provisions of the constitution and the act of assembly passed in pursuance thereof relating to the exemption of property from taxation, and that the property mentioned in the plaintiff's bill of complaint as having been assessed and returned for taxation is not exempt from taxation.

From this it follows that the plaintiff's bill of complaint must be dismissed.

*Errors assigned* were (1) In finding as follows: "It will be observed that the title to the property is in Tobias Mullen, his heirs and assigns, and we do not understand that by the conveyance to him there is raised any trust in favor of the members of St. Patrick's Roman Catholic Church of Franklin." (2) In finding as follows: "In either case the use is private and personal and there is no evidence whatever of any dedication of the property to a public or a different use." (3) In finding as follows: "While today a school is being maintained in the building which is open to all comers, those having the right to the use of it may lawfully say tomorrow that none but members or adherents of their particular church shall be admitted. The question is not will they do so, but may they do so?" (4) In finding as follows: "By so doing the members would do only that which they might lawfully do, and no one would question the propriety of their so doing." (5) In finding as follows: "The public has in no sense any vested interest therein or control thereover. Both the ownership and control are private." (6) In finding: "That the property upon which the taxes in question have been levied is not devoted to a purely public charity within the meaning of the provisions of the constitution

and the act of assembly passed in pursuance thereof relating to the exemption of property from taxation, and that the property mentioned in the plaintiff's bill of complaint as having been assessed and returned for taxation is not exempt from taxation. From this it follows that the plaintiff's bill of complaint must be dismissed." (7) In the decree, to wit: "And now, March 22, 1897, this cause came on to be heard and was argued by counsel, whereupon, upon consideration thereof, it is ordered, adjudged and decreed as follows, viz: That the preliminary injunction heretofore granted in this case be dissolved; that the plaintiff's bill of complaint herein be dismissed, and that the plaintiff pay the costs of this suit."

*C. Heydrick*, with him *Carl I. Heydrick*, for appellant.—The essential feature of a public use is that it is not confined to privileged individuals, but is open to the indefinite public. It is this indefinite and unrestricted quality that gives it its public character: Donohugh's Appeal, 86 Pa 306; Mullen v. Commissioners, 85 Pa. 288.

Where there are no apparent reasons to traverse it, the presumption is that the existing state of things will continue: Miller v. Henry, 84 Pa. 33.

The use defines the exemption, not the mode of dedication. The public use is the only thing that the exemption is conditioned upon. The legislature has not designated any mode of dedication as a condition precedent to exemption.

The congregation of St. Patrick's Church, though an unincorporated association, has a quasi-corporate existence, and has power to hold the equitable title to the land and build appropriate buildings thereon: Phipps v. Jones, 20 Pa. 260.

The objection that the property may at any time be diverted from the public charitable use, and lawfully so, at the will of the plaintiff, is not well considered. The funds contributed for the maintenance of the school are bound to be applied in furtherance of that charity and not otherwise: Bethlehem v. Fire Co., 81 Pa. 445.

That the school property is not taxable because the school is "denominational," was decided in 1892: Episcopal Academy v. Philadelphia, 150 Pa. 565.

*Wm. H. Forbes*, for appellees.

OPINION BY REEDER, J., July 23, 1897 :

This is a bill in equity for an injunction to restrain the county of Venango from assessing and collecting taxes from the plaintiff for property of the Roman Catholic Church, upon which a building is erected which is used as a school.

The only question raised by the assignments of error is : Is this a purely public charity, such as will, under the statutes of this state and the provision in the state constitution, be exempt from taxation ?

While it is in evidence, and may be accepted by us as a fact, that the attendance upon this school is not limited to children of members or adherents to the Roman Catholic Church, but that children of all sects are admitted and taught there, and that no tuition is paid by the pupils, the expense of its maintenance being met by voluntary contributions principally from the congregation of the church, yet it is under the domination and control of the Roman Catholic Church, and the property is their exclusive property.

The property in question is not the property of a corporation. Its use, control, management and regulation are entirely within the power of the plaintiff. The title is conveyed to him in trust for the members of the congregation. The owners of the building can at any time assert their right to exclusive benefit therefrom. The conduct and management are rendered no part of the institution by its organic law, but can at any time, by the act of the owners thereof, be restricted entirely, absolutely and exclusively to the children of members of the congregation.

In interpreting the Act of May 14, 1874, P. L. 158, which designated certain classes of institutions as being exempt from taxation, and within the letter of which act this institution might come, we must read into it the provision of the constitution of the state, which provides that "the general assembly may by general laws exempt from taxation public property used for public purposes and institutions of purely public charity."

Therefore, no institution falling within the act of 1874 can, under it, be exempt from taxation, unless it also falls within the provision of the constitution, and is purely a public charity.

The question as to what are institutions of purely public char-

ity has been considered and determined by the Supreme Court in a very large number of cases. For the purposes of this case it is only necessary to cite a few of the principles which have the most direct application to the case before us. There can be no doubt that this school, under the evidence, is a charity. It is not carried on for profit, and all children, whether members of the church or not, are at present received and taught in the school without being charged anything for tuition. There is no obligation upon the owners of this property to continue this course, and, in the nature of things, it is but a fair presumption that when the children of the members of this congregation become numerous enough to require the entire space contained in the school building for their education, the tuition will be restricted to the children of the people to whom the school belongs.

In Philadelphia v. Woman's Christian Association, 125 Pa. 572, Chief Justice PAXSON says : " Yet it did not appear in that case upon the hearing of the preliminary injunction, however the fact may have been, that the real estate taxed was stamped with any public charity nor was there anything to show that the regulation of the schools might not have been changed at any time and converted into a source of profit."

In Thiel College v. County of Mercer, 101 Pa. 530, the same Chief Justice says: " It can convert the very land it seeks to exempt from taxation into money and apply it to its own corporate use."

In Philadelphia v. Masonic Home, 160 Pa. 572, " the defendant was an incorporated institution, and its charter provided that its object should be to provide for indigent, afflicted or aged free masons, their widows and orphans in the state of Pennsylvania, and for such others as may be placed in its charge." This was held to be not a public charity.

" The property must be regularly and permanently devoted to purely charitable purposes to entitle it to exemption from taxation : " Contributors v. Delaware Co., 169 Pa. 305.

We can add nothing further to the excellent opinion filed by the court below which will give additional strength to what it has said in the disposition of this case.

The exceptions are dismissed and the decree affirmed.